IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED FIRE & CASUALTY COMPANY, | § | NO. 5:19-CV-1260-DAE |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| KEITH ZARS POOLS, LTD, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| _____ | § | |

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(DKT. # 11) AND GRANTING IN PART AND DENYING IN PART
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. # 12)</u>

      This is a declaratory-judgment action in which United Fire & Casualty Company ("Plaintiff" or "United Fire") seeks a declaration that no coverage exists, it has no duty to defend Keith Zars Pools, Ltd. ("Defendant" or "Zars"), and it has no duty to provide indemnity to, or pay for any judgment rendered against Zars in Cause No. 2018-CI-16581, <u>Matthew Bush and Jenevieve Ramos, individually and as surviving parents of Hunter Bentley Bush, and a/n/f of T.B. and M.B., minors v. Julia DelaCruz Armstrong and SC Casa, LLC et al</u>, in the 288th District Court of Bexar County, Texas (the "Underlying Suit").

      Before the Court is a Motion for Summary Judgment filed by United Fire and a Cross-Motion for Summary Judgment filed by Zars.  (Dkts. ## 11, 12.)

Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing.  After careful consideration of memoranda, exhibits, and briefing, the Court **DENIES** Plaintiff's motion and **GRANTS IN PART AND DENIES IN PART** Defendant's motion for the reasons that follow.

<u>BACKGROUND AND PROCEDURAL HISTORY</u>

This case involves an insurance-coverage dispute, at the center of which is the tragic drowning of a young child in a swimming pool allegedly designed and constructed by Zars.  In the Underlying Suit, the First Amended Petition (the "Petition" or Dkt. # 11, Exh. A) alleges the following facts that are relevant to this Court's analysis:

(1)    "This lawsuit involves the design, construction of a pool . . . by Keith Zars Pools, Ltd."  (<u>Id.</u> at ¶ 16.)

(2)    "Zars Pools is not an engineering firm or architecture firm.  Zars Pools does not hold any design licenses."  (<u>Id.</u> at ¶ 17.)

(3)    "On or about June 13, 2012, [Zars] and Julia Armstrong executed a 'Keith Zars Pools, Ltd. Construction Contract.'"  (<u>Id.</u> at ¶ 19.)

(4)    "After receiving a 'wish list' from Julia Armstrong, Zars Pools' employees Richard Quick and Will Parrot designed the Subject Pool. The design of the Subject Pool was a unique design – i.e., not a stock design."  (<u>Id.</u> at ¶ 20.)

(5)    "The Subject Pool incorporated into its design a Sun Shelf Cliff that is incident to a Sun Shelf."  (<u>Id.</u> at ¶ 21.)

(6)    "At or before the time that Zars Pools designed the Subject Pool with a Sun Shelf Cliff, Zars Pools marketed the Sun Shelf as a safe place for toddlers to play even if they were not strong swimmers."  (<u>Id.</u> at ¶ 22.)

(7)    "At the time of that marketing, Zars Pools knew that changes in water depth presents a risk of serious bodily injury and death and that said risk requires warnings."  (<u>Id.</u> at ¶ 23.)

(8)    "Despite that knowledge, Zars Pools failed to give any warning to Julia Armstrong about the hazards associated with the Sun Shelf Cliff."  (<u>Id.</u> at ¶ 24.)

(9)    "Zars Pools failed to install any warning signs at, on, or near the Subject Pool."  (<u>Id.</u> at ¶ 25.)

(10)  "Zars Pools failed to design safeguards to mitigate the hazards presented by the Sun Shelf Cliff."  (<u>Id.</u> at ¶ 26.)

(11)  "Zars Pools failed to install cup anchors at the Sun Shelf Cliff and failed to provide any device to warn or act as a barrier at the Sun Shelf Cliff."  (<u>Id.</u>)

Zars took out two relevant general liability policies with insurer United Fire: the Commercial General Liability policy ("CGL policy") and the Commercial Liability Umbrella policy ("Umbrella policy") (collectively, the "Policies").  Each of the Policies contain exclusions to coverage.  At issue in this case are the following exclusions: (1) the "Construction Management Errors and Omissions" Exclusion under the CGL policy, (2) the "Contractors – Professional Liability" Exclusion under the CGL policy, and (3)  the "Professional Services" Exclusion under the Umbrella policy.  The exclusions under the CGL policy are provided below:

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **1.** or **2.**

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

4

(Dkt. # 11, Exh. B.)  The exclusion under the Umbrella policy states that insurance coverage for bodily injury and property damage does not apply to "Professional Services" (Dkt. # 11, Exh. C), noting in relevant part:

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering of or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

**(3)** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

Relying on these exclusions, United Fire filed its Motion for Summary Judgment against Zars on February 12, 2020, seeking a declaratory judgment. (Dkt. # 11.)  Zars filed a response to United Fire's Motion on February 18, 2020, (Dkt. # 14), and also filed a Cross-Motion for Summary Judgment on February 12, 2020, contending that the exclusions were not implicated and therefore, the Court should order United Fire to defend Zars in the underlying lawsuit (Dkt. # 12).  United Fire responded to Zars' Motion on February 26, 2020, (Dkt. # 15), and Zars filed an untimely reply (Dkt. # 16).  This Court allowed for Zars' reply to remain on the docket over opposition, but the Court granted United Fire leave to file a surreply (Dkt. # 21), which United Fire did on April 21, 2020 (Dkt. # 22).  The parties also advised the Court of the status of the Underlying Suit on April 29, 2020.  (Dkt. # 23.)

APPLICABLE PRINCIPLES OF INSURANCE LAW

I.      Burden of Proof of Contract Interpretation

"Insurance policies are contracts and are governed by the principles of interpretation applicable to contracts."  Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1095 (5th Cir. 1995).  The Court's role is to determine whether there is any ambiguity in the terms of the applicable insurance policy, and if the terms of the policy are unambiguous, the Court will not vary from those terms.  See Royal Indem. Co. v. Marshall, 388 S.W.2d 176, 181 (Tex. 1965).  Whether there is an ambiguity is a question of law, but "[t]he fact that the parties may disagree about the policy's meaning does not create an ambiguity."  State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010) (citations and internal quotation marks omitted).

The insured generally bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage.  Tex. Ins. Code § 554.002; see Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co., 592 F.3d 687, 691–92 (5th Cir. 2010) ("Although the burden is typically 'on the insured to show that a claim against him is potentially within the scope of coverage under the policies,' when 'the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply.'" (citation omitted)).  "After the insured meets his burden to show that the alleged facts in the

6

petition state a potential claim against him, to defeat the duty to defend, the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule." Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 528 (5th Cir. 2004). If the insurer meets that burden, the burden shifts back to the insured to prove that an exception to the exclusion applies. Guar. Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998). "The goal in interpreting . . . [language within the contract] is to ascertain the true intentions of the parties as expressed in the writing itself." Richards v. State Farm Lloyds, No. 19-0802, 2020 WL 1313782, at *5 (Tex. Mar. 20, 2020) (citation and internal quotation marks omitted). "In interpreting these insurance policies as any other contract, we must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole." Provident Life & Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003).

> II.    Duty to Defend

Whether an insurer has a duty to defend the insured is a distinct issue from whether the insurer has a duty to indemnify the insured. D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co., 300 S.W.3d 740, 743 (Tex. 2009). "In deciding the duty to defend, the court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition.

7

The duty to defend depends on the language of the policy setting out the contractual agreement between insurer and insured." <u>Richards</u>, 2020 WL 1313782, at *5 (citation omitted); <u>see also</u> <u>GuideOne Elite Ins. Co. v. Fielder Road Baptist Church</u>, 197 S.W.3d 305, 307 (Tex. 2006) (noting that under the "eight-corners rule" when an insured is sued by a third party, "the liability insurer is to determine its duty to defend solely from [the] terms of the policy and the pleadings of the third-party claimant"); <u>Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.</u>, 400 F.3d 260, 263 (5th Cir. 2005) (applying Texas law). "The focus of the inquiry is on the alleged facts, not on the asserted legal theories." <u>Northfield</u>, 363 F.3d at 528 (citing <u>St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.—Tex.</u>, 249 F.3d 389, 392 (5th Cir. 2001)). Artful pleading, absent evidence of collusion between the third-party claimant and the insured, does not create an exception to the general eight-corners rule. <u>GuideOne</u>, 197 S.W.3d at 311. "The rationale behind the eight-corners rule is to require insurers to defend the insured against all claims, even those without merit." <u>Id.</u>

The rule in Texas is that courts "resolve all doubts regarding the duty to defend in favor of the duty." <u>King v. Dallas Fire Ins. Co.</u>, 85 S.W.3d 185, 187 (Tex. 2002); <u>Zurich Am. Ins. Co. v. Nokia, Inc.</u>, 268 S.W.3d 487, 491 (Tex. 2008) (same). "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated

8

to defend if there is, potentially, a case under the complaint within the coverage of the policy." Trinity Universal Ins. Co., 592 F.3d at 691.

       III.    Duty to Indemnify

       In contrast to the duty to defend, the "duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy." D.R. Horton, 300 S.W.3d at 744. Generally, "an insurer's duty to indemnify . . . cannot be ascertained until the completion of litigation, when liability is established, if at all." Colony Ins. Co. v. Peachtree Const., Ltd., 647 F.3d 248, 253 (5th Cir. 2011). "This is because . . . the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy." Id. "If any ambiguity exists, exceptions and limitations in a policy are construed strictly against the insurer." Northfield, 363 F.3d at 529 (citing Canutillo Ind. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 701 (5th Cir. 1996)).

       However, while generally Texas law only considers the question of duty to indemnify after the underlying suit is concluded, a court may consider this question justiciable if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." Northfield, 363 F.3d at 529 (citing Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d

81, 84 (Tex. 1997) (emphasis omitted)); <u>United Fire & Cas. Co. v. Kent</u>

<u>Distributors, Inc.</u>, 759 F. App'x 326, 330 (5th Cir. 2019) (same).  "Because the

duty to defend is broader than the duty to indemnify[,] . . . [l]ogic and common

sense dictate that if there is no duty to defend, then there must be no duty to

indemnify."  759 F. App'x at 330 (citing <u>Am. States Ins. Co. v. Bailey</u>, 133 F.3d

363, 368 (5th Cir. 1998) (internal quotation marks omitted)).

SUMMARY JUDGMENT LEGAL STANDARD

"Summary judgment is appropriate only if 'there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.'"

<u>Vann v. City of Southaven</u>, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted);

<u>see</u> <u>also</u> Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists when the

'evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'"  <u>Bennett v. Hartford Ins. Co. of Midwest</u>, 890 F.3d 597, 604 (5th Cir.

2018) (quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986)).  "The

moving party 'bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact.'"  <u>Nola Spice Designs,</u>

<u>LLC v. Haydel Enter., Inc.</u>, 783 F.3d 527, 536 (5th Cir. 2015) (quoting <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant

10

may merely point to the absence of evidence and thereby shift to the non-movant

the burden of demonstrating . . . that there is an issue of material fact warranting

trial.'" Kim v. Hospira, Inc., 709 F. App'x 287, 288 (5th Cir. 2018) (quoting Nola

Spice Designs, 783 F.3d at 536).  While the movant must demonstrate the absence

of a genuine issue of material fact, it does not need to negate the elements of the

nonmovant's case.  Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017)

(quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)).  A

fact is material if it "might affect the outcome of the suit."  Thomas v. Tregre, 913

F.3d 458, 462 (5th Cir. 2019) (citing Anderson, 477 U.S. at 248).

"When the moving party has met its Rule 56(c) burden, the

nonmoving party cannot survive a summary judgment motion by resting on the

mere allegations of its pleadings."  Jones v. Anderson, 721 F. App'x 333, 335 (5th

Cir. 2018) (quoting Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010)).

The nonmovant must identify specific evidence in the record and articulate how

that evidence supports that party's claim.  Infante v. Law Office of Joseph

Onwuteaka, P.C., 735 F. App'x 839, 843 (5th Cir. 2018) (quoting Willis v. Cleco

Corp., 749 F.3d 314, 317 (5th Cir. 2014)).  "This burden will not be satisfied by

'some metaphysical doubt as to the material facts, by conclusory allegations, by

unsubstantiated assertions, or by only a scintilla of evidence.'"  McCarty v.

Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017) (quoting Boudreaux v.

11

Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)).  In deciding a summary

judgment motion, the court draws all reasonable inferences in the light most

favorable to the nonmoving party.  Wease v. Ocwen Loan Servicing, LLC,

915 F.3d 987, 992 (5th Cir. 2019).

       Additionally, at the summary judgment stage, evidence need not be

authenticated or otherwise presented in an admissible form.  See Fed. R. Civ. P.

56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir.

2017).  However, "[u]nsubstantiated assertions, improbable inferences, and

unsupported speculation are not sufficient to defeat a motion for summary

judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012)

(quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

ANALYSIS

       Plaintiff argues that it has no duty to defend or indemnify Defendant

in the Underlying Suit because the Policies exclude "both professional services and

construction management errors and omissions" and that because the Petition

alleges solely a design defect against Zars, the exclusions to the Policies apply.

(Dkt. # 11.)  United Fire asserts that "[t]he sole allegation against Zars in the

Underlying Lawsuit is that the design of the pool – not its construction or

manufacture – contributed to the child's death" (id. at 1) and that while "[a] badly

built pool that caused injury" would not be excluded under the Policies, "a

12

perfectly built pool based on an allegedly bad design is excluded" (Dkt. # 15 at 6). By contrast, Zars contends that it is "a contractor and not a professional" and that its work on the swimming pool that is the focus of the Underlying Suit falls under the exceptions to the Policies' exclusions.  (Dkt. # 12.)

As noted above, under the eight corners rule, courts must "give the allegations in the petition a liberal interpretation."  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).  As stated by the Fifth Circuit:

> In Texas, the contractual duty to defend "is determined solely from the face of the pleadings and without reference to facts outside the pleadings." The duty arises when a third party sues the insured on allegations that, if taken as true, *potentially* state a cause of action within the terms of the policy.  However, in applying this pleadings only rule, the court may indulge the most liberal interpretation of the allegations of which they are susceptible and doubts as to the import of the allegations are to be resolved in favor of the insured and coverage.

Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co., 762 F.2d 1239, 1243–44 (5th Cir.), amended on reh'g in part, 768 F.2d 89 (5th Cir. 1985) (citations omitted).

Here, based on the eight corners rule and given the Fifth Circuit's mandate for courts to liberally interpret the allegations, this Court determines that there remain significant factual disputes that make it inappropriate to find no duty to defend.  The Petition "does not state facts sufficient to clearly bring the case within or without the coverage," and thus, this Court must follow the general rule that "the insurer is obligated to defend if there is, potentially, a case under the

complaint within the coverage of the policy."  See <u>Trinity Universal Ins. Co.</u>, 592 F.3d at 691.

Given the rule in Texas that courts should "resolve all doubts regarding the duty to defend in favor of the duty," the Court finds that there is a duty to defend.  See <u>King</u>, 85 S.W.3d at 187.  United Fire is obligated to defend Zars in the Underlying Suit.  Additionally, the Court finds that declaratory judgment on United Fire's duty to indemnify is premature as the Underlying Suit is still pending.  See <u>Colony Ins. Co.</u>, 647 F.3d at 253 (noting that generally "an insurer's duty to indemnify . . .  cannot be ascertained until the completion of litigation, when liability is established, if at all").

<u>CONCLUSION</u>

Based on the foregoing, this Court finds that Plaintiff's Motion for Summary Judgment shall be **DENIED**, and Defendant's Motion for Summary Judgment shall be **GRANTED IN PART AND DENIED IN PART**.  The parties are directed to file a statement by June 19, 2020, stating the issues that remain to be decided, as well as a status update in the Underlying Suit.

**IT IS SO ORDERED**.

**DATED**: San Antonio, Texas, May 8, 2020.

_____
David Alan Ezra
Senior United States District Judge